IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY AT NEWARK

| | |
|---|---|
| LORETTA BUTERA,<br><br>                          Plaintiff,<br>v.<br><br>HONEYWELL INTERNATIONAL, INC.,<br><br>                          Defendant. | Case No. __2:18-cv-13417_____<br><br>**JURY TRIAL DEMANDED** |

## COMPLAINT

Plaintiff Loretta Butera ("Plaintiff") brings this action against Honeywell International, Inc. ("Defendant" or "Honeywell"). Plaintiff's allegations are based upon personal knowledge as to her own conduct and on information and belief as to the acts of others.

## NATURE OF THE CASE

1. Plaintiff Loretta Butera brings this action concerning Honeywell gas valves for model years 2010 through 2012, bearing model number WV8840 ("Gas Valves"). Honeywell designed, manufactured, sold, and distributed the Gas Valves without disclosing to consumers that each Gas Valve's plastic temperature sensor ("Plastic Sensor" or "Sensor"), which is inserted into the water heater and gauges how hot the water is, is defective.

2. The Honeywell Gas Valves are installed on and sold with gas hot water heaters which are manufactured and sold under various brand names, including, but not limited to: Bradford White, American Water Heater, Proline, Whirlpool, U.S. Craftsman, Rheem, Kenmore, and A.O. Smith.

3. The Plastic Sensors, due to Honeywell's material selection, manufacturing decisions, and the Sensors' unsuitability for their intended use and environment, erode or otherwise

1

deteriorate such that a pin-sized hole (or holes) form in the Sensors, thereby causing water to leak from an affected water heater's Sensor to the surrounding premises (the "Defect"). The water flow will not stop until the water supply is shut off, the water is drained from the water heater, and the Sensor is replaced.

4. As a result of the Defect, which was present at the time the Honeywell Gas Valves were placed in the stream of commerce, flooding incidents have caused damage to consumers'—including Plaintiff's—Honeywell units and water heaters, as well as causing water damage to homes or premises. Although these incidents have been reported to Honeywell, the company did not forewarn consumers, recall the Gas Valves, or otherwise notify customers about the Defect.

5. The Honeywell Gas Valves should never have been placed in the stream of commerce. Honeywell's conduct violates the laws of New Jersey. Plaintiff seeks to compel Honeywell to warn consumers about the Defect, to bear the expense of replacing the defective Gas Valves in hot water heaters that have not yet failed, and to pay for property damage that has already resulted from the Defect, including but not limited to flooding. Additionally, Plaintiff seeks statutory and compensatory damages, injunctive and declaratory relief, restitution, disgorgement of profits, attorneys' fees and costs, and the repair or replacement of Gas Valves.

**PARTIES**

6. Plaintiff Loretta Butera is a citizen and resident of Sumner County, Tennessee.

7. Defendant Honeywell International Inc. ("Honeywell") is a corporation organized and existing under the laws of Delaware with its principal place of business in Morristown, New Jersey.

**JURISDICTION AND VENUE**

8. This Court has jurisdiction over this action under 28 U.S.C. § 1332, as Plaintiff is a citizen and resident of the State of Tennessee, Defendant maintains its principal place of business in the State of New Jersey, and the amount in controversy in this matter exceeds $75,000.00.

9. This Court may exercise jurisdiction over Defendant because it maintains its principal places of business in this District, does substantial business in this State and within this District, receives substantial compensation and profits from the marketing, distribution, and sales of products in this District, and has engaged in the unlawful practices described in this Complaint in this District, so as to subject itself to personal jurisdiction in this District, thus rendering the exercise of jurisdiction by this Court proper and necessary.

10. Venue is proper in this District under 28 U.S.C. § 1391(b)(1) because Defendant has continuous and systematic contacts with this District and maintains its principal place of business within this District. Further, venue is proper in this District under 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to Plaintiff's claims occurred in this District.

## SUBSTANTIVE ALLEGATIONS

### The Honeywell Gas Valve Defect

11. Every gas water heater has a gas valve control that is mounted outside of the water heater tank that controls the pilot light for the gas supply and regulates the water temperature within the water heater. Honeywell is one of the leading manufacturers of gas valves for water heaters.

12. The Gas Valve contains a "thermowell"—a tubular fitting used to protect the Gas Valve's temperature sensors. A temperature sensor is inserted in the open end of the thermowell tube.

13. The thermowell located in Honeywell Gas Valves is made of a polymeric plastic material, as shown below in the "Bottom View" diagram.



14. The Gas Valve control comes pre-installed on several brands of water heaters, including, but not limited to: Bradford White, American Water Heater, Proline, Whirlpool, U.S. Craftsman, Rheem, Kenmore, and A.O. Smith.

15. While the Defect is present at the point of sale, the Defect remained latent until it manifested, causing damage to consumers' property. However, Honeywell knew or should have known that the Gas Valves contained the Defect. Specifically, the temperature sensor located inside the water heater contains the Defect that allows a hole (or holes) to form, causing water to leak from the water heater and floods the surrounding area.

16. Defective Gas Valves utilize polymeric plastic on the tip of the threaded back plate. As the polymeric plastic is exposed to water, it deteriorates, decreases in thickness, becomes

brittle, and eventually erodes such that water leaks from the water heater. The photographs below show a Gas Valve after the Defect has manifested.





17. Eventually, the fractured plastic polymer allows water under pressure to flow into the gas control area, causing leakage, damage to the water heater, and flooding of consumers' homes and personal property.

18. Honeywell knew or should have known that the Gas Valve is defective and would be prone to fracture and leakage.

19. Significantly, Honeywell manufactures gas valves in which it substitutes metal for the defective polymeric plastic. The metal tipped gas valves do not experience the severe deterioration and/or leakage seen in the plastic Gas Valves at issue here. For example, while 2010 through 2012 "WV Model" Honeywell Gas Valves utilize polymeric material on the tip, the more recent "WT Model" Honeywell gas valve is manufactured with a metal tip.



**Pictured: A side-by-side comparison of the Honeywell WT Model gas valve (left, with metal tip) and the WV Model Gas Valve (right, with plastic polymer tip).**



**Pictured: WT Model gas valve on the left, with metal tip. WV Model gas valve on the right, with plastic polymer tip.**

## HONEYWELL'S NEGLIGENT AND INTENTIONAL CONDUCT

20. Honeywell failed to adequately design, manufacture, and/or test Gas Valves to ensure they were free from the Defect before offering it to sale to consumers, including Plaintiff, despite its duty to do so.

21. The Defect poses a serious and immediate safety risk to consumers and the public, including Plaintiff, and has caused or will cause Gas Valves to fail during their expected useful lives.

22. Honeywell's Gas Valve should have been usable for its intended purpose during its expected useful life of 6-10 years.[1] The Defect, however, existed at the time that Gas Valves were

---

[1] Int'l Assoc. of Certified Home Inspectors, *InterNACHI's Standard Estimated Life Expectancy Chart for Homes*, http://www.nachi.org/life-expectancy.htm (last visited June 27, 2018).

7

sold to consumers, including Plaintiff, and the Defect immediately rendered the Gas Valves unfit for the ordinary and intended purpose for which they are marketed and sold.

23. If Plaintiff's Gas Valve did not suffer from the Defect, Plaintiff would not have suffered the damages set forth in this Complaint.

24. Honeywell has a duty to protect consumers, including Plaintiff, by warning them that the Defect poses unreasonable risks of personal injury and/or property damage.

25. Nonetheless, even though Honeywell knew or should have known of the Defect, it chose to conceal the existence of the Defect, continued to sell Gas Valves, and failed to remove Gas Valves from the marketplace. Honeywell took these actions to realize the substantial financial benefits of selling the defective Gas Valves to unsuspecting consumers, including Plaintiff.

26. Honeywell knew or should have known that consumers, including Plaintiff: (a) were unaware of the Defect and could not reasonably be expected to discover the Defect until their Gas Valves failed; (b) expected to use Gas Valves in their homes without putting their safety and property at risk; and (c) expected Honeywell to disclose any Defect that would prevent Gas Valves from safely performing their intended purpose for their expected useful life, as such disclosure by Honeywell would impact a reasonable consumer's decision whether to purchase a water heater with the Honeywell Gas Valves.

27. As a result of Honeywell's concealment of the Defect, many consumers remain unaware of the existence of the Defect and that the Gas Valves pose an unreasonable risk of personal injury and/or property damage during normal use.

28. Had Plaintiff been aware of the Defect, she would not have purchased a water heater with the Honeywell Gas Valve, or else would have paid significantly less. Plaintiff did not receive the benefit of her bargain as a result.

## HONEYWELL'S KNOWLEDGE OF THE DEFECT

29. Honeywell knew or should have known when it sold the Gas Valves that these Gas Valves contained the Defect, that the Gas Valves would not hold up to continuous exposure to hot water, and that as a result of the Defect, the Gas Valves could leak causing damage to the unit, to consumers' homes, and to other property.

30. Honeywell's knowledge of the Defect is evident from its decision change the materials used in manufacturing their gas valves, namely by manufacturing the thermowells in later WT Model gas valves from metal rather than polymeric plastic to eliminate deterioration and leakage problems as described herein. Despite addressing the deterioration and leaking issues through their WT Model gas valves, Honeywell did not alert consumers, including Plaintiff, that their Gas Valves contained the Defect and that these defective Gas Valves posed a threat of leaking, flooding, and damage to their real and personal property.

31. Despite knowing that its Gas Valves were likely to deteriorate and leak as a result of continuous exposure to hot water in their known and intended environment during ordinary operation, Honeywell continued to sell, distribute, and install Gas Valves that suffered from the Defect.

32. As discussed above, Honeywell was aware that their Gas Valves contained the Defect and that a change in production materials was necessary to allow the gas valves to function as intended and not fail during normal and intended use. Honeywell nevertheless decided to manufacture, distribute, and sell Gas Valves containing the Defect. Honeywell thus had exclusive and superior knowledge of the Defect and actively concealed the Defect and corresponding damage from consumers, including Plaintiff, who had no way to reasonably discover the problem before buying their water heaters.

33. Had Plaintiff been aware of the Defect, she would not have purchased a water heater with the Honeywell Gas Valve, or else would have paid significantly less. Plaintiff did not receive the benefit of her bargain as a result.

## PLAINTIFF'S EXPERIENCE

34. Plaintiff Loretta Butera purchased her water heater outfitted with a Honeywell Gas Valve from her local Lowe's in February of 2012.

35. Plaintiff initially did not experience any problem with the water heater. However, on March 24, 2018, Plaintiff's water heater began leaking from the Gas Valve, flooding her garage. The flooding further damaged Plaintiff's finished basement situated below the garage causing damage to the drywall, ceiling, and carpet.

36. Plaintiff subsequently contacted A&H Plumbing to repair her water heater and paid $308.00 for a new gas valve and its installation. Plaintiff expects to incur further expenses as a result of damage to her finished basement.

37. As a result of the Defect and Defendant's failure to advise of its existence at the point of sale, Plaintiff has suffered damages. Had Plaintiff been aware of the Defect, she would not have purchased a water heater with the Honeywell Gas Valve, or else would have paid significantly less. Plaintiff did not receive the benefit of her bargain as a result.

## TOLLING OF STATUTE OF LIMITATIONS

38. <u>Active Concealment Tolling</u>. Any statutes of limitations are tolled by Honeywell's knowing and active omission and concealment that the Gas Valves suffered from a Defect. Honeywell had a duty to disclose this Defect and its consequent performance and safety problems to Plaintiff because Honeywell had superior knowledge of this Defect and the Defect was neither known to, nor easily discoverable by, Plaintiff.

39. Despite its affirmative duty to disclose the nature and existence of this Defect, Honeywell kept Plaintiff ignorant of vital information essential to the pursuit of her claims, without any fault or lack of diligence on the part of Plaintiff. The details of Honeywell's efforts to omit its above-described unlawful conduct are in its possession, custody, and control, to the exclusion of Plaintiff. Plaintiff could not reasonably have discovered the fact that the Gas Valves suffered from a Defect.

40. <u>Estoppel</u>. Honeywell was and is under a continuing duty to disclose to Plaintiff the true character, quality, and nature of the Defect. At all relevant times, and continuing to this day, Honeywell knowingly, affirmatively, and actively misrepresented and omitted the true character, quality, and nature of the problems caused by this Defect. The details of Honeywell's knowledge and omissions are in its possession, custody, and control, to the exclusion of Plaintiff. Plaintiff reasonably relied upon Honeywell's knowing and/or omissions. Based on the foregoing, Honeywell is estopped from relying upon any statutes of limitation in defense of this action.

41. <u>Equitable Tolling</u>. Honeywell took active steps to omit the fact that it wrongfully, improperly, illegally, and repeatedly manufactured, marketed, distributed, sold, and/or leased the Gas Valves with the leaking problems caused by the Defect. The details of Honeywell's efforts to conceal the Defect are in its possession, custody, and control, to the exclusion of Plaintiff. Honeywell's failure to disclose and active concealment of the Defect amounts to bad faith and deception in and of itself. When Plaintiff learned about this material information, they exercised due diligence by thoroughly investigating the situation, retaining counsel, and pursuing their claims. Should it be necessary, therefore, all applicable statutes of limitation are tolled under the doctrine of equitable tolling.

42. Given Honeywell's active and knowing concealment of the Defect, equitable tolling of the statutes of limitations applicable to the causes of action brought in this case is appropriate.

43. Plaintiff could not have reasonable discovered the true reasons for the Defect until the recent investigation which led to the filing of this Complaint.

11

### FIRST CLAIM FOR RELIEF
**Breach of Express Warranty**
**(N.J. Stat. Ann. § 12A:2-313)**

44. Plaintiff incorporates all of the foregoing allegations into this cause of action.

45. Honeywell expressly warranted that the Gas Valves were free from defect in materials and workmanship and promised it would replace all defective parts and provide replacement units for those that developed water leaks.

46. Honeywell materially breached its express warranties by manufacturing, selling, and leasing the Gas Valves that contained the Defect, which rendered them unsafe and unfit for use as warranted.

47. As a result of Honeywell's breach of warranties, Plaintiff has suffered damages, including diminished value of her Gas Valve and damage to property.

48. Honeywell's time limits on its warranties are unconscionable because Honeywell knew or had reason to know that Plaintiff might not experience failure or deterioration of the Gas Valve. In many instances, detection of the Defect would only occur once the Defect manifested and Gas Valves leaked and stopped working properly after the warranty period had expired. By making misleading representations and/or omissions about the Defect, Honeywell prevented Plaintiff and consumers from timely exercising their rights under the warranties.

49. Plaintiff is entitled to recover all damages as a result of Honeywell's breach of warranties in an amount to be determined at trial.

### SECOND CLAIM FOR RELIEF
**Breach of Implied Warranty**
**(N.J. Stat. Ann. § 12A:2A-212)**

50. Plaintiff incorporates all of the foregoing allegations into this cause of action.

51. Honeywell warranted that the Gas Valves were of merchantable quality and fit for their ordinary purpose. Honeywell warranted that the Gas Valves would operate properly. Honeywell breached these implied warranties in that the Gas Valves were not merchantable because parts of the Gas Valves deteriorate, causing the Gas Valves to develop holes and leak

water, thereby failing of their intended and ordinary purpose. The Gas Valves contained the Defect described herein, such that the water heaters leaked and failed to function as intended.

52. Privity is not required here because Plaintiff is an intended third-party beneficiary of contracts between Honeywell and dealers of water heaters that included the Honeywell Gas Valves. Accordingly, Plaintiff is an intended third-party beneficiary of Honeywell's implied warranties, such that privity is not required. These dealers of water heaters were not intended to be the ultimate consumers of the Gas Valves and have no rights under the warranty agreements provided with the Gas Valves; the warranty agreements were designed for and intended to benefit consumers only.

53. As a result of Honeywell's breaches of implied warranties, Plaintiff has suffered damages.

54. Plaintiff is entitled to recover all damages as a result of Honeywell's breach of warranties in an amount to be determined at trial.

### THIRD CLAIM FOR RELIEF
**Negligence**

55. Plaintiff incorporates all of the foregoing allegations into this cause of action.

56. Honeywell owed Plaintiff and consumers a duty of reasonable care to ensure that the Gas Valves would operate safely and properly for its intended purpose and reasonably expected use.

57. Honeywell breached its duty by failing to ensure that the Gas Valves were free from the Defect. Honeywell also breached its duty by failing to warn Plaintiff and consumers that the Gas Valves were not free from the Defect or the safety hazards caused by it.

58. As a direct and proximate result of Honeywell's negligence, the Defect in the Gas Valves manifests, allowing holes to develop in the water heaters, thereby causing them to leak.

59. As a direct and proximate result of Honeywell's negligence, the Defect in the Gas Valves manifested, and Plaintiff has suffered damages.

60. Plaintiff is entitled to recover all damages as a result of Honeywell's negligence in an amount to be determined at trial.

## FOURTH CLAIM FOR RELIEF
### Violation of the Magnuson-Moss Warranty Act
### (15 U.S.C. § 2301, *et seq.*)

61. Plaintiff incorporates all of the foregoing allegations into this cause of action.

62. Under the Magnuson-Moss Warranty Act, Plaintiff is a "consumer," Honeywell is a "supplier" and "warrantor," and the Gas Valves are "consumer products." 15 U.S.C. § 2301(1), (3)-(5).

63. Under 15 U.S.C. § 2310(d)(1), the Magnuson-Moss Warranty Act provides a cause of action for any consumer who is damaged by the failure of a warrantor to comply with a written or implied warranty.

64. Honeywell's express warranties are written warranties within the meaning of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301(6). The Gas Valves' implied warranties are covered under 15 U.S.C. § 2301(7).

65. Honeywell breached these warranties as described in more detail in the above causes of action. Without limitation, all the Gas Valves suffer from a common Defect that manifests in the form of water leaks and is present at the point of sale.

66. Under the Magnuson-Moss Warranty Act, Honeywell was obligated to disclose to Plaintiff and consumers the known Defect and was obligated to repair or otherwise remedy the Defect.

67. Privity is not required here because Plaintiff is an intended third-party beneficiary of contracts between Honeywell and dealers of water heaters that included the Honeywell Gas Valves. Accordingly, Plaintiff is an intended third-party beneficiary of Honeywell's implied warranties, such that privity is not required. These dealers of water heaters were not intended to be the ultimate consumers of the Gas Valves and have no rights under the warranty agreements provided with the Gas Valves; the warranty agreements were designed for and intended to benefit consumers only.

68. Honeywell failed to meet its disclosure and remedy obligations, despite reasonable opportunity to do so.

69. As a result of Honeywell's violation of the Magnuson-Moss Warranty Act, Plaintiff suffered damages.

70. Plaintiff is entitled to recover statutory relief as a result of Honeywell's violation of the Magnuson-Moss Warranty Act in an amount to be determined at trial.

### FIFTH CLAIM FOR RELIEF
**Unjust Enrichment**

71. Plaintiff incorporates all of the foregoing allegations into this cause of action.

72. As described above, Honeywell sold the Gas Valves to Plaintiff and consumers even though the Gas Valves were defective and posed a safety hazard. Honeywell further failed to disclose its knowledge of the Defect and its attendant risks at the point of sale or following purchase and installation of the water heaters including the Honeywell Gas Valves in consumers' homes. Furthermore, Honeywell charges for repairs of the water heaters without disclosing that the Defect is widespread and that the repairs do not address its root cause.

73. As a result of its fraudulent acts and omissions related to the defective Gas Valves, Honeywell obtained monies and other benefit which rightfully belong to Plaintiff.

74. Honeywell appreciated, accepted, and retained the benefits conferred by Plaintiff, who, without knowledge of the Defect, paid a higher price for a water heater including the defective Gas Valve than that water heater was worth.

75. Honeywell's retention of these wrongfully-obtained profits would violate the fundamental principles of justice, equity, and good conscience.

76. Plaintiff is entitled to restitution of the profits Honeywell unjustly obtained, plus interest.

### SIXTH CLAIM FOR RELIEF
**Strict Product Liability – Manufacturing and Design Defect and Failure to Warn**

77. Plaintiff incorporates all of the foregoing allegations into this cause of action.

78. Honeywell designed and manufactured the Gas Valves for their inclusion in various models of water heaters, which were sold and distributed to Plaintiff and other consumers.

79. The Gas Valves were defective in their design and were defective when they left Honeywell's possession or control.

80. The Gas Valves were defectively manufactured and posed a substantial likelihood of harm when they left Honeywell's possession or control.

81. Honeywell knew, or should have known, that the Gas Valves contained the latent Defect, which would not be obvious to end consumers. Honeywell knew that the Gas Valves were highly susceptible to failure under expected conditions and ordinary use. Further, Honeywell knew that consumers, including Plaintiff, could not detect the Defect and therefore would not replace the Honeywell Gas Valve within their water heater until it had already failed.

82. Honeywell failed to inform Plaintiff and other consumers as to the Gas Valves' Defect and susceptibility to failure. Honeywell failed to warn consumers that it was necessary to replace the Gas Valves, even if the Gas Valves had not yet failed.

83. The Gas Valves were defective due to inadequate warnings, inadequate inspection and testing, inadequate reporting the results of quality control testing, or lack thereof, and due to their defective design and manufacture.

84. Had consumers, including Plaintiff, been adequately warned concerning the likelihood that the Gas Valves would fail, they would have taken steps to avoid damages by replacing the Gas Valve. Had Plaintiff been aware of the Defect, she would not have purchased a water heater with the Honeywell Gas Valve, or else would have paid significantly less. Plaintiff did not receive the benefit of her bargain as a result.

85. Honeywell, after learning of the Defect, had a post-sale duty to warn consumers, including Plaintiff, of the possibility that leaking and flooding could result from the failure of the Gas Valves, even when used for their intended purpose.

86. Honeywell is strictly liable for the damages that the defective Gas Valves have caused to Plaintiff.

87. As a direct and proximate result of the Defect in design and manufacture of the Honeywell Gas Valves, the Defect in the manifested, and Plaintiff has suffered damages.

88. Plaintiff is entitled to recover all damages as a result of Honeywell's liability in an amount to be determined at trial.

## PRAYER FOR RELIEF

Therefore, Plaintiff seek judgment against Honeywell and relief as follows:

A. Damages and other relief under statutory or common law;

B. Attorneys' fees and costs;

C. Pre- and post-judgment interest;

D. Declaratory, injunctive, and equitable relief; and

E. Such other relief as is just and proper.

## JURY DEMAND

Plaintiff hereby demands a trial by jury as to all matters so triable.

Dated: August 30, 2018                    Respectfully submitted,

*/s/ Mitchell M. Breit*
Mitchell M. Breit
Paul J. Hanly, Jr.
**SIMMONS HANLY CONROY LLC**
112 Madison Avenue
New York, New York 10016-7416
Telephone: (212) 784-6400
Facsimile: (212) 213-5949
mbreit@simmonsfirm.com
phanly@simmonsfirm.com

Gregory F. Coleman (*pro hac vice* forthcoming)
Adam Edwards (*pro hac vice* forthcoming)
Mark E. Silvey (*pro hac vice* forthcoming)
Lisa A. White (*pro hac vice* forthcoming)
**GREG COLEMAN LAW PC**
First Tennessee Plaza
800 S. Gay Street, Suite 1100
Knoxville, TN 37929
Telephone: (865) 247-0080
Facsimile: (865) 522-0049
greg@gregcolemanlaw.com
adam@gregcolemanlaw.com
mark@gregcolemanlaw.com
lisa@gregcolemanlaw.com

**CERTIFICATE OF SERVICE**

      The undersigned certifies that on this 30th day of August, 2018, a copy of Plaintiff's Complaint was filed electronically with the Clerk of Court using the CN/ECF system which will send notification of the filing to all counsel of record

                                  */s/ Mitchell M. Breit*
                                  Mitchell M. Breit
                                  **SIMMONS HANLY CONROY LLC**
                                  112 Madison Avenue
                                  New York, New York 10016-7416
                                  Telephone: (212) 784-6400
                                  Facsimile: (212) 213-5949
                                  mbreit@simmonsfirm.com