**NOT FOR PUBLICATION**

# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| LORETTA BUTERA and GREG HOLDEN, on behalf of themselves and others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>HONEYWELL INTERNATIONAL, INC.,<br><br>Defendant. | Civil Action No: 18-13417-SDW-LDW<br><br>**OPINION**<br><br>January 6, 2020 |

**WIGENTON**, District Judge.

Before this Court is Defendant Honeywell International, Inc.'s ("Defendant") Motion to Dismiss Plaintiffs Loretta Butera ("Butera") and Greg Holden's ("Holden") (collectively, "Plaintiffs") Second Amended Class Action Complaint (D.E. 22, "SAC") pursuant to Federal Rules of Civil Procedure ("Rule") 12(b)(6) and 9(b). Jurisdiction is proper pursuant to 28 U.S.C. § 1332(d). Venue is proper pursuant to 28 U.S.C. § 1391. This opinion is issued without oral argument pursuant to Rule 78. For the reasons stated herein, the Motion to Dismiss is **GRANTED**.

### I. BACKGROUND AND PROCEDURAL HISTORY

Defendant is a Delaware corporation with a principal place of business in New Jersey. (SAC ¶¶ 1, 10.) Defendant is a designer and manufacturer of commercial and consumer products including "sensors, switches, and instruments for measuring temperature, control and metering of gas and electricity." (*Id.* ¶ 11.) Plaintiffs allege that between 2010 and 2012, Defendant "designed,

manufactured, sold, and distributed" gas valves for residential hot water heaters bearing model number WV8840 (the "Valves") "without disclosing to consumers that [the Valves'] temperature sensor ["Sensor"] . . . is defective." (*Id.* ¶ 2.) The Valves were "installed in and sold with gas hot water heaters . . . manufactured and sold under various brand names, including, but not limited to: Bradford White, American Water Heater, Proline, Whirlpool, U.S. Craftsman, Rheem, Kenmore, and A.O. Smith." (*Id.* ¶ 3.) Plaintiffs allege that the Valves are "unsuitable for [their] intended use" because their Sensors are enclosed in a "plastic polymeric casing" (known as a "thermowell") instead of a metal casing. (*Id.* ¶¶ 2, 4–5.) The plastic casing "prematurely erodes or otherwise deteriorates . . . causing water to leak through an affected thermowell and in turn through the [] Valve to the surrounding premises," damaging consumers' water heaters and their homes. (*Id.* ¶¶ 5–6.)

Butera is a citizen and resident of Tennessee who purchased a water heater from her "local Lowe's in February of 2012." (*Id.* ¶¶ 8, 49.) Butera does not identify what brand heater she purchased. Just over six years later, on March 24, 2018, "her water heater began leaking" from the Valve, flooding her garage and damaging the basement below. (*Id.* ¶ 50.) Butera paid a plumber $308.00 to repair the water heater and replace the Valve. (*Id.* ¶ 51.) Butera also contends that she will incur additional costs to fix the flood damage to her home. (*Id.*)

Holden is a citizen and resident of California who purchased a water heater "outfitted with the [Valve] from his local Home Depot in 2012." (*Id.* ¶¶ 9, 53.) Holden does not identify what brand heater he purchased. Six years later, on April 23, 2018, "his water heater began leaking, flooding his garage and resulting in water damage to nearby cabinetry and drywall." (*Id.* ¶ 54.) Holden does not indicate what caused the water heater to leak. He contends his water heater could

not be repaired and that he paid $600.00 to replace it and another $1,400.00 to repair the damage to his property. (*Id.* ¶ 55.)

On August 30, 2018, Plaintiffs filed a putative class action Complaint in this Court. (D.E. 1.) Plaintiffs subsequently filed their First Amended Class Action Complaint (D.E. 9, "FAC") on December 7, 2018. This Court granted in part Defendant's Motion to Dismiss the FAC on April 18, 2019 (D.E. 20, "Opinion"), but gave Plaintiffs 30 days to amend.[1] Plaintiffs filed the SAC on May 20, 2019, asserting claims for Violation of the Tennessee Products Liability Act ("TPLA") (Count One, Butera); Breach of Express Warranty (Count Two, Holden); Breach of Implied Warranty (Count Three, Holden); Negligence (Count Four, Holden); Violations of the Magnuson-Moss Warranty Act ("MMWA") (Count Five, Butera and Holden); Unjust Enrichment (Count Six, Holden); Strict Product Liability (Count Seven, Holden); Violation of the California Unfair Competition Law ("UCL") (Count Eight, Holden); and Violation of the Song-Beverly Consumer Warranty Act ("SBA") for Breach of Implied Warranty of Merchantability (Count Nine, Holden). Defendant moved to dismiss the SAC on June 10, 2019, and briefing was timely completed.[2] (D.E. 25, 29, 41.)

## II.    LEGAL STANDARD

An adequate complaint must be "a short and plain statement of the claim showing that the pleader is entitled to relief." Rule 8(a)(2). This Rule "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. Factual allegations must be enough to raise a right to relief above the speculative level[.]" *Bell Atlantic Corp. v. Twombly*,

---

[1] Specifically, this Court granted the motion to dismiss Plaintiffs' New Jersey Consumer Fraud Act claims, Butera's state-law and Magnuson-Moss Warranty Act claims, and Holden's California Unfair Competition Law claim. (Opinion at 4–10.) The remainder of the motion was dismissed as moot. (*Id.* at 10–11.)

[2] Once again, Plaintiffs' opposition brief does not comply with the font size and line spacing requirements of Local Civil Rule 7.2. Future failure to adhere to the Local Rules may result in sanctions.

3

550 U.S. 544, 555 (2007) (internal citations omitted); *see also Phillips v. Cty. of Allegheny*, 515 F.3d 224, 232 (3d Cir. 2008) (stating that Rule 8 "requires a 'showing,' rather than a blanket assertion, of an entitlement to relief").

In considering a Motion to Dismiss under Rule 12(b)(6), the Court must "accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." *Phillips*, 515 F.3d at 231 (external citation omitted). However, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *see also Fowler v. UPMC Shadyside*, 578 F.3d 203 (3d Cir. 2009) (discussing the *Iqbal* standard). Determining whether the allegations in a complaint are "plausible" is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679. If the "well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct," the complaint should be dismissed for failing to "show[] that the pleader is entitled to relief" as required by Rule 8(a)(2). *Id.*

Rule 9(b) requires that "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake. Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally." Rule 9(b). Plaintiffs "alleging fraud must state the circumstances of the alleged fraud[ulent act] with sufficient particularity to place the defendant on notice of the 'precise misconduct with which [it is] charged.'" *Park v. M & T Bank Corp.*, Civ. No. 09–02921, 2010 WL 1032649, at *5 (D.N.J. Mar. 16, 2010) (citing *Lum v. Bank of Am.,* 361 F.3d 217, 223–24 (3d Cir. 2004)).

4

## III. DISCUSSION

As a federal court sitting in diversity, this Court would normally engage in a choice of law analysis to determine which state's law applies to each of the instant claims.[3] However, Defendant argues, and Plaintiffs do not dispute, that the law of each Plaintiff's home state should apply to Plaintiffs' claims. (D.E. 25-1 at 5–11; D.E. 29 at 1.) Therefore, the Court need not engage in a choice of law analysis and will apply the law of each plaintiff's home state to their respective claims. *See, e.g.*, *UBI Telecom Inc. v. KDDI Am., Inc.*, Civ. No. 13-1643, 2014 WL 2965705, at *9 (D.N.J. June 30, 2014) ("When the parties agree upon which state's law applies . . . the Court need not conduct [a] choice-of-law inquiry."); *see also Cole v. NIBCO, Inc.*, Civ. No. 13-7871, 2015 WL 2414740, at *5 (D.N.J. May 20, 2015); *MacDonald v. Unisys Corp.*, 951 F. Supp. 2d 729, 737 n.5 (E.D. Pa. 2013); *Sager v. Hoffman La Roche, Inc.*, 2012 WL 3166630, at *14 n.9 (N.J. Super. Ct. App. Div. Aug. 7, 2012).[4]

### A. Tennessee Claim (Count One; Butera)

Butera's sole state claim is for violation of the TPLA, which subsumes all product liability actions in Tennessee. *See Strayhorn v. Wyeth Pharm., Inc.*, 737 F.3d 378, 392 (6th Cir. 2013) (internal citation omitted). Butera's allegations are couched in terms of defective design/ manufacture and failure to warn. Specifically, Butera alleges that the Valves "were not reasonably safe for their ordinary and intended use; [Defendant] failed to provide . . . adequate and sufficient

---

[3] Because the putative class has not yet been certified, this action is "one between [the named plaintiffs] and the defendant[]" and "must be evaluated as to these particular plaintiffs." *Rolo v. City Investing Co. Liquidating Tr.*, 155 F.3d 644, 659 (3d Cir. 1998).

[4] Although Defendant does not raise the issue, the Court notes that the SAC's failure to specify which state's laws apply to the common law claims may not meet the Rule 8 pleading standard. *See, e.g.*, *In re Wellbutrin XL Antitrust Litig.*, 260 F.R.D. 143, 167 (E.D. Pa. 2009) ("The plaintiffs fail to link their claim to the law of any particular state. As a result of this deficiency, the plaintiffs fail to state a cause of action . . . ."); *see also Nimley v. PTT Phone Cards Inc.*, Civ. No. 13-2216, 2014 WL 1464311, at *6 n.7 (E.D. Pa. Apr. 15, 2014). However, out of an abundance of caution, the Court will analyze the merits of the SAC. *See Cole*, 2015 WL 2414740, at *5 n.2.

warnings regarding the known and foreseeable risks and dangers inherent in the [] Valves; and the design, methods of manufacture, and testing of the [] Valves were inadequate and produced defective products." (SAC ¶ 89.)

In Tennessee, "in order for a plaintiff to recover under any theory of product liability, the plaintiff must establish that the product was defective and unreasonably dangerous at the time the product left the control of the manufacturer." *Moore v. C.R. Bard, Inc.*, 217 F. Supp. 3d 990, 994 (E.D. Tenn. 2016) (quoting *Higgs v. Gen. Motors Corp.*, 655 F. Supp. 22, 23 (E.D. Tenn. 1985)). Here, Butera fails to allege sufficient facts for the Court to infer that her Valve was defective or unreasonably dangerous. She alleges that her Valve was defective because Defendant used plastic in the construction of its thermowell and that plastic is unsuitable because it "prematurely erodes or otherwise deteriorates such that pin-sized holes form in the thermowell." (SAC ¶ 5.) However, the fact that the thermowell was made from plastic, standing alone, does not show that her Valve was defective. Under the TPLA, Butera must present "evidence or authority that the use of [plastic] makes the products per se defective or unreasonably dangerous." *Moore*, 217 F. Supp. 3d at 995. Providing no such authority, her "assertions are speculative and conclusory, akin to [the] allegations that were specifically considered—and rejected—by *Iqbal*." *Id.* (granting motion to dismiss). Count I, therefore, must be dismissed.[5,6]

---

[5] Even if the SAC sufficiently alleged that the Valve was defective and unreasonably dangerous at the time it left Defendant's control, Count I must still be dismissed because it does not sufficiently allege that Butera's "'injury was proximately caused by the defective product.'" *Moore*, 217 F. Supp. 3d at 994 (quoting *Sigler v. Am. Honda Motor Co.*, 532 F.3d 469, 483 (6th Cir. 2008)). Butera's allegation that her Valve leaked, without pleading facts to indicate that the leak was actually caused by a premature deterioration of the plastic in the thermowell, is insufficient to allege that the Valve's defect proximately caused her injuries. *See Brewer v. Mr. Heater, Inc.*, Civ. No. 13-1330, 2014 WL 1364825, at *2 (W.D. Tenn. Apr. 7, 2014) (dismissing TPLA claim over heater allegedly designed without guard because plaintiff failed to allege "facts indicating 'how' the alleged defect caused her injuries").

[6] Similarly, with regard to her failure-to-warn theory, a "plaintiff must show that: (1) the warnings at issue were defective; (2) the defective warning made the product unreasonably dangerous; and (3) the inadequate labeling proximately caused the claimed injury." *Moore*, 217 F. Supp. 3d at 995 (citations omitted). Here, Butera does not plead any facts regarding what warnings from Defendant she saw and relied on, how those warnings were deficient,

B. California Claims (Counts Two – Four, Six – Nine; Holden)

  1. *Breach of Express Warranty (Count Two)*

The SAC alleges that Defendant "expressly warranted that the [Valves] were free from defect in materials and workmanship and promised it would replace all defective parts and provide replacement units for those that developed water leaks." (SAC ¶ 94.) The SAC further alleges that Defendant's "time limits on its warranties are unconscionable" because the Valve defect was often only discoverable after the warranty period expired, preventing Holden from timely exercising his rights under the warranty. (*Id.* ¶ 97.)

"To state a claim for breach of express warranty under California law, a plaintiff must allege (1) the exact terms of the warranty; (2) reasonable reliance thereon; and (3) a breach of warranty which proximately caused plaintiff's injury." *T & M Solar & Air Conditioning, Inc. v. Lennox Int'l Inc.*, 83 F. Supp. 3d 855, 875 (N.D. Cal. 2015) (internal citations omitted). "To allege facts identifying the exact terms of the warranty, a plaintiff must provide 'specifics' about what the warranty statement was, and how and when it was breached." *Id.*

Here, Holden does not plead facts sufficient to allege that Defendant breached its express warranty and that the breach caused Holden's injury. First, even taking the SAC's brief summary of the warranty terms at face value,[7] there can be no breach where Holden did not provide Defendant with an opportunity to repair or replace the damaged water heater.[8] Second, even if

---

and/or how the deficient warnings caused her injury. Without these facts, the Court cannot infer that Defendant's allegedly deficient warnings caused Butera's injuries. *See id.*

[7] Holden does not allege that he received or saw a copy of the warranty. Nor does he attach a copy of the warranty to the SAC, or even allege the duration of the warranty, which he admits expired before his water heater leaked. (*See* SAC ¶ 97.) Nonetheless, out of an abundance of caution, the Court addresses the merits of his claim based on his brief summary of the alleged warranty terms.

[8] Holden argues that providing Defendant with an opportunity to perform under the warranty would have been futile because (1) Defendant would have just replaced the Valve with another defective Valve and (2) the repair request would have been denied for being outside an "unconscionably short warranty period." (D.E. 29 at 12.) However, the SAC alleges that Holden's water heater leaked in 2018, six years after it alleges that Defendant ceased making the

there was a breach, the SAC does not sufficiently allege that the breach proximately caused Holden's injury. Although it states that "his water heater began leaking," there is no allegation that the leak originated in the Valve, let alone that the leak was caused by plastic deterioration in his Valve's thermowell. (SAC ¶ 54.)

The SAC also fails to allege that Holden reasonably relied on or even saw Defendant's express warranty. Although California courts do not require reliance where there is privity between the parties, *see Asghari v. Volkswagen Grp. of Am., Inc.*, 42 F. Supp. 3d 1306, 1334 (C.D. Cal. 2013), no privity exists here. Holden bought his water heater from a Home Depot; the water heater was manufactured by an unnamed company using a component made by Defendant. *See Clemens v. DaimlerChrysler Corp.*, 534 F.3d 1017, 1023 (9th Cir. 2008) ("A buyer and seller stand in privity if they are in adjoining links of the distribution chain. Thus, an end consumer . . . who buys from a retailer is not in privity with a manufacturer." (citations omitted)); *Yu-Santos v. Ford Motor Co.*, Civ. No. 06-1773, 2009 WL 1392085, at *21 (E.D. Cal. May 14, 2009) (dismissing car purchaser's breach of warranty claim against seatbelt manufacturer for lack of privity).

Because the SAC fails to sufficiently plead breach, reasonable reliance, or proximate causation, Count II must be dismissed.

### 2. Breach of Implied Warranty (Count Three)

According to the SAC, Defendant warranted that the Valves "were of merchantable quality and fit for their ordinary purpose," and that they "would operate properly." (SAC ¶ 101.) Holden

---

defective Valves. (SAC ¶¶ 24, 54.) Therefore, Holden does not allege any facts to support an inference that Defendant would have replaced his Valve with a defective Valve. Additionally, if the repair request did fall outside the warranty period, which Holden does not identify, then there was no warranty in effect that could be breached. *See Clemens v. DaimlerChrysler Corp.*, 534 F.3d 1017, 1022–23 (9th Cir. 2008) (dismissing breach of express warranty claim made after warranty expiration where "defect allegedly existed before the warranty expired, and [Defendant allegedly] had knowledge of the defect at the time of sale"). Nor does Holden allege any facts to support an inference that the unidentified warranty period was unconscionably short.

alleges that Defendant breached this warranty of merchantability when parts of the Valves prematurely deteriorated and caused water heaters to leak. (*Id.*) The Valves thus failed to function as intended and were not of merchantable quality when they left Defendant's control. (*Id.* ¶¶ 101–102.)

"The implied warranty of merchantability requires that 'every sale of consumer goods that are sold at retail in [California] shall be accompanied by the manufacturer's and the retail seller's implied warranty that the goods are merchantable.'" *Stewart v. Electrolux Home Prods., Inc.*, 304 F. Supp. 3d 894, 912 (E.D. Cal. 2018) (quoting Cal. Civ. Code § 1792). "To state a claim for breach of implied warranty of merchantability, a party must plead facts sufficient to show that 'the product did not possess even the most basic degree of fitness for ordinary use.'" *Pini USA, Inc. v. NB Glob. Commodities, LLC*, Civ. No. 17-4763, 2017 WL 5054655, at *5 (C.D. Cal. Oct. 31, 2017) (quoting *Mocek v. Alfa Leisure, Inc.*, 114 Cal. App. 4th 402, 406 (Cal. Ct. App. 2003)). As with breach of express warranty, "[u]nder California law, the general rule is that privity of contract is required in an action for breach of . . . implied warranty." *Stewart*, 304 F. Supp. 3d at 914 (citation and some punctuation omitted). "An end consumer who buys from a retailer is not in privity with a manufacturer." *Id.*

Holden does not allege facts sufficient to show that his Valve did not possess "even the most basic degree of fitness for ordinary use." *Birdsong v. Apple, Inc.*, 590 F.3d 955, 958 (9th Cir. 2009) (quoting *Mocek*, 114 Cal. App. 4th at 406). Instead, Holden alleges that his water heater "began leaking," without alleging that the leak originated with the Valve. (SAC ¶ 54.) Holden further alleges that the leak occurred six years after he purchased the water heater, and after the Valve's express warranty expired. (*Id.* ¶¶ 53–54; *see* ¶ 106.) An "implied warranty provides for a minimum level of quality." *Birdsong*, 590 F.3d at 958 (quotation marks and citation omitted).

9

Holden's allegations are insufficient for the Court to infer that the Valve did not meet this minimum level. Therefore, Count III must be dismissed.[9, 10]

    *3. Negligence (Count Four)*

Holden's negligence claim alleges that Defendant owed Holden a duty of reasonable care to ensure that the Valve operated safely for its intended purpose and reasonably expected use. (SAC ¶ 110.) The SAC alleges that Defendant breached this duty: (1) by failing to ensure that the Valve was free from defect and (2) by failing to warn that the Valve was defective and posed a safety hazard, resulting in damages to Holden. (*Id.* ¶¶ 111–13.)

"A negligence claim under California law requires plaintiff to allege that defendant owed plaintiff a legal duty, breached the duty, and that the breach was a proximate or legal cause of plaintiff's injury. In the context of a products liability lawsuit, under a negligence theory, a plaintiff must also prove that the defect in the product was due to negligence of the defendant." *In*

---

[9] Holden's claim must also be dismissed for lack of privity. *See Clemens*, 534 F.3d at 1023 (dismissing breach of implied warranty claim for lack of privity, where car purchaser brought suit against car manufacturer over defective head gaskets). Holden argues that a third-party beneficiary exception to privity should apply to him as the end consumer. (D.E. 29 at 17–18.) The Ninth Circuit did not expressly consider a third-party beneficiary exception in *Clemens* but did decline to create a new privity exception for the plaintiff. *Id.* at 1024 ("California courts have painstakingly established the scope of the privity requirement under California Commercial Code section 2314, and a federal court sitting in diversity is not free to create new exceptions to it."). Since *Clemens*, "[d]istrict courts in California [have been] split on a third-party beneficiary exception to privity in the consumer warranty context," and specifically whether *Clemens* forecloses the exception. *Stewart*, 304 F. Supp. 3d at 914–15 (summarizing and analyzing caselaw on both sides of the issue and holding that no such exception exists). Although Plaintiff cites to several cases post-*Clemens* that did find such an exception, (D.E. 29 at 18), none of these cases involved a component manufacturer, who is an additional level removed from the end consumer. *See Mega RV Corp. v. HWH Corp.*, 170 Cal. Rptr. 3d 861, 876 (Cal. Ct. App. 2014) ("a buyer ordinarily does not have an implied warranty claim against a manufacturer of an integrated component part"), *as modified on denial of reh'g* (May 20, 2014). In *Mega RV Corp.*, the California Court of Appeal did suggest some situations where a consumer may have an implied warranty claim against a component manufacturer (*e.g.*, the component can be a standalone product or the consumer received an express warranty from the component manufacturer). *Id.* at 876–77. However, those situations are not alleged here. Upon review of the caselaw, this Court finds that a third-party beneficiary exception to privity does not exist under California law. *See Stewart*, 304 F. Supp. 3d at 914–15. This Court additionally finds that, even if such an exception did exist, it would not apply to Holden. *See Mega RV Corp.*, 170 Cal. Rptr. 3d at 876.

[10] Because Holden fails to state a claim for breach of an express or implied warranty, his claim under California's SBA is also dismissed. *See Birdsong*, 590 F.3d at 958 n.2 (noting that "the court applies state warranty law" to SBA claims and dismissing a claim under the Act because plaintiffs failed to adequately plead a state-law claim for breach of warranty).

*re Toyota Motor Corp. Unintended Acceleration Mktg., Sales Practices & Prod. Liab. Litig.*, 754 F. Supp. 2d 1208, 1223 (C.D. Cal. 2010) (internal citations and some punctuation omitted).

As with his breach of express warranty claim, Holden's failure to plead facts sufficient to allege proximate causation is fatal to his negligence claim. Holden does not allege that the Valve in his water heater leaked; he only alleges that his water heater, made by an unnamed manufacturer, leaked. (SAC ¶ 54.) With the only facts being that his water heater leaked six years after he purchased it, Holden also fails to sufficiently allege that Defendant breached its duty to him. The Court cannot infer from these facts that a water heater leaking after six years of use suffered from a defect of any component, let alone specifically its Valve.[11]

Holden also fails to sufficiently allege that Defendant owed him a legal duty to warn. It is not plausible on these facts that consumers needed to be warned that a six-year-old water heater may leak. *See Lucas v. City of Visalia*, 726 F. Supp. 2d 1149, 1158 (E.D. Cal. 2010) (noting that a "manufacturer has a duty to use reasonable care to give warning of the dangerous condition of the product . . . if the manufacturer has reason to believe that [those who use the product] will not realize its dangerous condition" (internal citation omitted)).

In fact, Defendant only had a legal obligation to warn consumers about dangers that a "reasonably prudent manufacturer would have known and warned about." *Carlin v. Superior Court*, 920 P.2d 1347, 1351 (Cal. 1996). Plaintiffs do not provide facts sufficient to allege that Defendant knew about or should have known about the Valves' alleged premature deterioration. Plaintiffs allege that Defendant is a member of the water heater component industry and eventually replaced its plastic thermowells with metal thermowells, (SAC ¶¶ 35–48), but these facts alone are

---

[11] In Plaintiffs' first complaint, they alleged that the "expected useful life" of a Valve is 6–10 years, (D.E. 1 ¶ 22), an expectation that Holden's Valve met.

insufficient to allege that Defendant knew or should have known of the "particular risk." *See Carlin*, 920 P.2d at 1351; *see also Coleman-Anacleto v. Samsung Elecs. Am., Inc.*, Civ No. 16-02941, 2016 WL 4729302, at *13–14, *19 (N.D. Cal. Sept. 12, 2016) (dismissing negligent-failure-to-warn claim for failure to allege facts showing that defendant knew of defect). Therefore, Count Four must be dismissed.

### 4. Unjust Enrichment (Count Six)

"[C]ourts have repeatedly held that 'there is no cause of action in California for unjust enrichment.'" *In re Apple & AT & T iPad Unlimited Data Plan Litig.*, 802 F. Supp. 2d 1070, 1077 (N.D. Cal. 2011) (quoting *Melchior v. New Line Prods., Inc.*, 131 Cal. Rptr. 2d 347 (Cal. Ct. App. 2003)); *see also Aguiar v. Merisant Co.*, Civ. No. 14-670, 2014 WL 6492220, at *9 (C.D. Cal. Mar. 24, 2014) ("Defendants contend that California law does not recognize a cause of action for unjust enrichment. The Court agrees."); *In re Ford Tailgate Litig.*, Civ. No. 11-2953, 2014 WL 1007066, at *5 (N.D. Cal. Mar. 12, 2014) ("California, among other jurisdictions, has rejected independent unjust enrichment claims." (citation omitted)). Therefore, Count Six is dismissed.

### 5. Strict Product Liability (Count Seven)

Under California law, "[t]he elements of a strict products liability cause of action are [i] a defect in the manufacture or design of the product or a failure to warn, [ii] causation, and [iii] injury." *Park-Kim v. Daikin Indus., Ltd*, Civ. No. 15-9523, 2016 WL 5958251, at *9 (C.D. Cal. Aug. 3, 2016) (quoting *Cnty. of Santa Clara v. Atl. Richfield Co.*, 137 Cal. App. 4th 292, 318 (Cal. Ct. App. 2006)). Holden's strict liability claim asserts all three theories: manufacturing defect, design defect, and failure to warn. (SAC ¶¶ 134–45.) However, for the reasons discussed above, Holden fails to allege a defect or causation. Although the SAC states that Holden's "water heater began leaking," there is no allegation that the leak originated in the Valve, let alone that the leak

was caused by plastic deterioration in his Valve's thermowell. (SAC ¶ 54.) Because Holden does not factually allege that his Valve was defective and that his injury was caused by the Valve's defective condition, Count Seven must be dismissed.[12]

### 6. *Violation of the UCL (Count Eight)*

Holden's UCL claim must meet the pleading standards of both Rules 12(b)(6) and 9(b). *See Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1125 (9th Cir. 2009) (recognizing that "Rule 9(b)'s heightened pleading standards apply to claims for violations of the . . . UCL"); *Keegan v. Am. Honda Motor Co.*, 838 F. Supp. 2d 929, 937 (C.D. Cal. 2012) (noting that UCL claims "sound in fraud, and are therefore subject to the heightened pleading requirement of Rule 9(b)"). Here, the SAC alleges that Defendant "failed to disclose its knowledge of the Defect at the point of sale" and that Defendant "knowingly concealed that the [Valves] suffered from [a] Defect which caused them to fail before their anticipated useful life." (SAC ¶¶ 148, 151.) A claim for failure to disclose pursuant to the UCL must show: "(1) the existence of a design defect; (2) the existence of an unreasonable safety hazard; (3) a causal connection between the alleged defect and the alleged safety hazard; and [(4)] that the manufacturer knew of the defect at the time a sale was made." *Williams v. Yamaha Motor Co.*, 851 F.3d 1015, 1025 (9th Cir. 2017) (citations omitted); *see also Afzal v. BMW of N. Am., LLC*, Civ. No. 15-8009, 2016 WL 6126913, at *8 (D.N.J. Oct. 17, 2016).

Once again, Holden fails to plead facts sufficient to sustain a UCL claim. The SAC pleads that Defendant, "as a member of the water heater component industry—knew or should have

---

[12] Holden's failure-to-warn theory must also fail for these reasons and additionally because, as discussed above, Holden does not sufficiently allege that Defendant or the scientific community had knowledge of the risk of plastic thermowells at the time of distribution. *See Coleman-Anacleto*, 2016 WL 4729302, at *17 ("Knowledge, actual or constructive, is a requisite for strict liability for failure to warn. . . . Typically, under California law, we hold manufacturers strictly liable for injuries caused by their failure to warn of dangers that were known to the scientific community at the time they manufactured and distributed their product." (internal citations and some punctuation omitted)).

known of the existence of the Defect prior to sale of the [] Valves," but does not allege any facts to support a finding that membership in the industry gave Defendant actual or constructive knowledge of the Valves' alleged premature degradation. (SAC ¶ 149.) This is insufficient under both Rule 12(b)(6) and the heightened pleading requirements of Rule 9(b). *See Riachi v. Prometheus Grp.*, Civ. No. 17-811, 2017 WL 2438838, at *3 (D.N.J. June 6, 2017) (citing *In re Advanta Corp. Sec. Litig.*, 180 F.3d 525, 534 (3d Cir. 1999)).[13] Therefore, Count Eight will be dismissed.

**CONCLUSION**

For the reasons set forth above, Defendant's Motion to Dismiss is **GRANTED**.[14] An appropriate order follows.

                                         ___/s/ Susan D. Wigenton_____
                                         **SUSAN D. WIGENTON, U.S.D.J.**

Orig:        Clerk
cc:          Leda D. Wettre, U.S.M.J.
                Parties

---

[13] Holden's allegation that Defendant performed "materials testing" on the Valves prior to sale, and that this testing was either "inadequate" or revealed the defect, (SAC ¶ 150), is a conclusory allegation unsupported by facts and is therefore insufficient to show Defendant's knowledge. *See In re Nexus 6P Prods. Liab. Litig.*, 293 F. Supp. 3d 888, 908 (N.D. Cal. 2018) (dismissing as too conclusory an allegation that "Defendants knew (or exercising due diligence should have known) that the [products] were defective at the time of sale").

[14] Because this Court grants Defendant's motion to dismiss Plaintiffs' state law claims, it also dismisses Plaintiffs' MMWA claim (Count Five). *See Clemens*, 534 F.3d at 1022 (noting that "claims under the [MMWA] stand or fall with [] express and implied warranty claims under state law").